Good morning, Your Honors. My name is Angelo Calfo, and with Teresa DeMonte, my colleague, we represent the Malhotras in this False Claims Act case. Your Honors, this is a case about a corrupt bankruptcy trustee who has never been held accountable by the Justice Department for his kickback scheme. And that's even though the Justice Department knows everything about it. And Congress knew there would be situations like this, and that's why they passed the amendments in 1986 to the public disclosure or to the FCA relating to the public disclosure bar. Because what's interesting about those amendments, and which I think is sometimes lost in the case law relating to this, is that before the amendments, if the government knew about the allegations that the private citizen was basing his complaint on, his or her complaint on, the case was barred. After the amendments, even if the government knows everything that the relator puts in his complaint, the case is not barred under the public disclosure doctrine. And in our view, we think this is what the district court failed to appreciate in its order. Because the issue isn't whether the government knew it. It isn't whether or not the government had other sources for the information. The issue is, was the information in the government's possession or in the relator's possession public? Now, that issue was never analyzed by the district court. Because if it had been, I think there's really only one conclusion, and that is that the grace examination, which is how I'll call it, was a private setting. It was a disclosure in a private sphere. Why do I say that? Yeah, maybe before you get into that, which I agree is the crux of the issue, can you just help me understand the distinction between the kind of wrongdoing that your clients initially suspected versus the kind of wrongdoing that was disclosed during the grace examination? Your Honor, I would submit, and this goes to the original source issue, and I would submit that the information that my clients had back in 2006, December of 2006, when they first encountered Mr. Steinberg, involved a broader set of allegations of fraud than the one the government or the one that was actually publicly disclosed later, and I'll explain why. The Malhotra's experience with Mr. Steinberg involved meeting with him, learning that his motivation was only to sell their property as opposed to be involved in a reorganization. It was a Chapter 11 at that time. They talked to the real estate broker who was immediately brought to the property as soon as Mr. Steinberg was appointed. The real estate broker, Mr. Grace, who was paying the kickbacks with John L. Scott and Remax, told them that Mr. Steinberg and he had been working together on 100 properties in the past. So I think this raised suspicions, and I'll call it suspicions, in the Malhotra's mind, and they continued to do work. What did they find? They found out that Mr. Steinberg had a real estate license. They found out by going to the public records in the bankruptcy courts that Mr. Steinberg was representative of the bankruptcy court, that property that was to be sold needed repair and was of a lower value than it actually was, and that those false statements were being made. They found out, they went to the public record to find the chain of title on some of those properties, learned that the property was being sold to people who Mr. Steinberg had hired as handymen in some other cases, clearly straw buyers who then resold the properties at higher profits. And presumably were kicking back to Steinberg a cut of the profits on the sale of the straw, right? Okay. So that's what my understanding of the wrongdoing they suspected, and then I guess obviously what the issue here is, the wrongdoing that was discussed during the Gray's Examination seems very different. It involves fraud, of course, and involves some of the same players, but it's of a different nature, no? Well, Your Honor, I think it's not, and I'll explain why. What the Malhotras learned is that, in addition, was that Mr. Gray's described himself as Mr. Steinberg's partner, which gave an inference that there was a sharing of income, not only on the straw buyers necessarily, but on the sale of the property. That was circumstantial reasoning on their part, but it was accurate reasoning, because they wrote to the bankruptcy court in approximately December of 2006 and said, you know what, we're really concerned that this fellow with a real estate license has a motive and the opportunity to profit from the transactions. That was prescient, and it was based on their experiences with Mr. Steinberg, because that's exactly what the scheme was. What the defendants took the position on at the lower court level was these payments, even if they were undisclosed to the bankruptcy court, were legitimate, because they were just sharing commissions. And because Mr. Steinberg was a real estate broker, he could legitimately obtain these commissions. So my submission is, Your Honor, when you look at all the evidence, which includes fraud in connection with the straw buyer program, fraud in connection with forcing people to sell property, railroading them to sell their property, he understood that from his own experience. He has a real estate license. He's working with the same broker over and over again. What they knew, he had fraudulent intent from the straw buyer transactions. So when you look at all the evidence, they go to the trustee and say, we smell a rat. This person is involved in a financial, improper financial relationship with the trustee. You should do something about it. Right, and the trustee does, but it turns out they find a fraud of a different sort, no? You still haven't quite met the issue there. Yeah. So tell me what the nature of the fraud that was disclosed in the grace examination was. Just describe it in a couple sentences. That Mr. Steinberg used his real estate license to obtain part of the commissions from the real estate brokers who sold the property, and they lied and concealed to the bankruptcy court about whether or not they obtained those commissions. I'd say that it's of the same nature as the Mahalter's earlier disclosure to the bankruptcy court that Mr. Steinberg was using his real estate license, his relationship with grace. But he didn't need to commit the, let's just call it the grace examination fraud. Yes. He didn't need a real estate license to do that, did he? I just thought, I read that as, hey, cut me back some of the money you're going to get from this, and I'll refer business to you. They could have done it that way, Your Honor, but that's not the way they did it. They actually, I mean, look at the records relating to the commissions, the way they justified it. It was part of the scheme that he was a real estate broker, and that's why he could receive the payments. And I believe the Mahalter's identified that. And, Your Honor, I'm not going to say it's as expansive an identification as was in the grace case, but it was an identification. And so really the question is, I think we know from the record what the facts are, and I've done my best to try and explain it, but what is it that a relator needs under the case law? What we know is that a relator doesn't need to know the allegations that are being made. He doesn't need to know the transactions that are fraudulent. What the statute says is the relator needs to know information upon which the allegations are based. Really important distinction. Right, but that's where you get here as to whether, well, they had suspicions about problems, but what is the information they knew that led to, as Judge Watford points out, the actual fraud that became at issue? What was the information they knew? Your Honor, I believe it was the information that I attempted to just describe. Basically that he has a real estate license and they suspected that he was misusing with people. I mean, what is the information? Is it that he had a real estate license? He had a real estate license? Well, that's public information. It is, Your Honor. It is, Your Honor. I mean, I don't think that the fact that it's public information alone means that it can't be original sources. But, Your Honor, I think the difference here is that what I'm trying to say is that when a relator puts together a series of information that leads to an inference of the fraud, that's sufficient to constitute information that qualifies them as an original source. The court may decide that there needs to be something more, but I think when you, they've got the guy, they know he's involved in a fraud with Mr. Grace. They know he's got a real estate license. They know that he's, they're doing it over and over and over again. They're selling over 100 properties. You know, and they're railroading buyers to sell the property. I mean, the only reason to do that is so they can get the commission. Now, my view, that circumstantial evidence constitutes information upon which the allegations were later based. That's our argument. And it furthers, I think, the purposes of the False Claims Act because these, they weren't on a, I mean, when they were questioned, they used words like suspicion and so forth. But they're lay people. You know, they don't know the significance of that. I think what's really important is what is it that they actually knew. And how would a lawyer or a court characterize that? No, I agree. I don't think it would be fair to, you know, have the case dismissed just because they used the wrong words as lay people. But they were more specifically asked, well, what did you know about the commission-based fraud? And I think they said pretty clearly in response to that, nothing until the Grace examination. Well, I think what they said, Your Honor, is we didn't have proof of it. We didn't have proof of what was happening. But we had our information. They characterized it as. Then you then get into what is the difference between suspicion and information. So we'll have to evaluate that. And I think that's right. And, I mean, I look at the case law and I don't really see a lot of, I don't think there's a lot of help on that. I think you look at Springfield Terminal, for example, which I think is really what our case is all about. And what the court says is that what you need to know is information that relates to one of the essential elements of the fraud. So, I mean, that's a pretty broad standard. And I think one that we could work with as the appellants in this case to say all that information they had gathered that led to the inference of fraud and some kind of financial sharing of commissions or other benefits from the sale of these properties was going on. That's our position. Would I like to have more facts that would nail it down? Yeah, of course I would. But I do think that it furthers the purposes of the FCA to allow these individuals to be characterized as original sources. Of course, we don't even get to that issue, Your Honors, if the court were to find that there was not a public disclosure. And our argument on that basically is that what the district court didn't do was analyze whether what happened at the Grace examination constituted disclosures in a public sphere. Didn't even analyze that. And if you look at all the cases, Schumer, if you look at Berg v. Honeywell. Well, first of all, Berg v. Honeywell is a memorandum of disposition that is not of any precedential value. And it's a very different situation where you had, as I recall, the auditors linked to the government in terms of the disclosure. So I don't think we can look at Berg for anything. Well, I can look that around, Your Honor. What I would say is that what you see in those cases is the fact the government knows the information isn't enough. The fact it's theoretically available to the public is not enough. There has to be an actual disclosure in a public sphere. So in Schumer, which I'll move to a more direct case, you know, you have this saying, you have the government going to somebody and giving them information. It was happenstance that those particular employees were there and got the information. And Schumer said that disclosure by the government of that information did not constitute a public disclosure. Now, when you look at the facts of it. So the disclosure was made to the employees of the investigated company in Schumer. Yes. My question really is this on the nature of this examination. You've cited Throe, which is, of course, a local case. But then we have Circuit and other authority that suggests that it's not like a deposition. Do you have anything that we should look at other than Throe that supports your position on that point? Legally, Your Honor, no. But I think Thoe is a very persuasively written case by Judge Brandt in this district. And I would also say that when you look at the testimony of Bill Corshawn, who was the U.S. trustee who handled this case, what did he say about whether this was a public setting? He said no. He said members of the public were excluded. That if somebody tried to show up at the deposition, his position would be you have no standing to be here. It was he stated they never gave anybody, there's no evidence they were giving this information to the public to begin with. But the evidence is also that it was just almost random that your client's case was chosen. That, to me, is the more problematic fact from your standpoint. Well, Your Honor, I mean, it's random that a particular employee may be at a search. I mean, I don't, I think that, I saw that in a brief. I said, well, it's just a coincidence. Well, it's often a coincidence that somebody comes into contact with the government in the private sphere and learns information. That would be how I would respond to that. And the Malhotra's, it's interesting. I mean, they say it was just a coincidence. But the notice of deposition said that we're doing this examination because it affects the Malhotra's estate. Well, and then 90% of the questions asked related to other cases? Is that? Well, the reason it affected their estate, Your Honor, is because Mr. Steinberg was the trustee in their proceeding. Mr. Grace was appointed as a broker. And so the reason the trustee chose the Malhotra's case, it was open, and Mr. Steinberg was the trustee. You want to save? You've used up all your time. I would like to save some. Well, you've used it all up. We'll give you a short rebuttal.  Well, I appreciate it. Thank you very much, Your Honors. Good morning, Your Honors. May it please the Court. My name is Mike Fandel, counsel for Respondent John L. Scotty, and I'm also speaking on behalf of all the respondents here this morning. And we ask that the Court affirm the District Court's decision to dismiss the case based on lack of subject matter jurisdiction. Where the appellants are asking the Court to go today is really to rewrite Ninth Circuit law to allow a relator to pursue a False Claims Act case, even though that relator provided no information of any true value to the government. The Malhotras had no true knowledge of the fraud that they alleged in their complaint. They didn't trigger the Office of the United States Trustees investigation. They didn't even help the investigation at all. This is the antithesis of what a bona fide relator in a False Claims Act case is required to do. Congress did not intend for people like the Malhotras to be able to take a free ride on a governmental investigation to pursue a False Claims Act case. This Court has repeatedly embraced that concept. As this Court said in the CL1 versus CLA case, the FCA, False Claims Act, is designed, quote, to prevent someone who has information only because he obtained it from the government from profiting from that information. Close quote. This is the CL1 case all over again. The District Court here had an opportunity, after extensive briefing and a full day of hearing, hearing from the Malhotras, hearing from two attorneys from the Office of the United States Trustee to evaluate questions about knowledge and information and whether or not the Malhotras actually benefited the government's investigation in any way. And some of the things that the Court found that are more than adequately supported by the evidence include, and these are all in the District Court's decision, the Malhotras lacked true knowledge of Steinberg's activities and had only suspicions. So in terms of your questions to counsel about what knowledge they had, they didn't have any knowledge. They didn't know anything, certainly not anything from an insider perspective. They had suspicions. In Mr. Kalfo's words, they smelled a rat. There's no question about that. What is it that you think they would have had to have disclosed to the U.S. Trustee at the outset to have a viable case here? Just give me the level of specificity you think they needed to come forward with. Information, specific, direct, and independent knowledge that they had under the statute, that there was fraud ongoing that would allow the Trustee's Office to open an investigation and uncover what ultimately they did uncover once they received the true information from Mr. Bennett. At the hearing, I used the example of Lance Armstrong, who's now subject to a false claims act because of his work with the Postal Service. I suspected prior to the time that it was announced that he had actually doped that he had doped. Everyone did. I could have called the Postal Service and said, you know, I don't think that guy's clean. I think he's been doping, and he's been presenting false claims to the Postal Service. That wouldn't have benefited the Postal Service at all because I don't have any knowledge. I only had suspicions. And as the court found, after weighing the credibility of the Malhotras and the attorneys from the Trustee's Office, the Malhotras had no true knowledge. They had nothing to offer the government that the government could go on. Just give me an example. What is it that they're supposed to have? An example would have been? Related to the kind of fraud that was disclosed in the Grace Examination. It would have been what Mr. Bennett had, which is receipts showing payment of a referral fee. The identity of specific transactions where referral fees had been paid. Some evidence, hard evidence, that the Trustee's Office could look at and say, you're right. We need to investigate this. What they had, even the suspicions that it did have, doesn't rise to the level of direct and independent knowledge under the statute because it wasn't information that they had from being on the inside of these transactions. And Mr. Bennett had worked with Mr. Steinberg. Mr. Bennett had seen the documents, was aware of these transactions as they were going on, and so was able, from that perspective, to bring the insider information to the Trustee's Office. Specific identification of allegations and transactions, which are the things that the statute refers to. Remind me, Mr. Bennett is the one who wrote the letter? Correct. Correct. He's the one. So, in other words, they do say in their brief something to the effect that their investigation showed that he was profiting from his position. I guess you're saying that's not enough. You need to show a transaction. What about an M.O.? About how he goes about it. What the appellants said about their investigation showing that he was profiting is not correct. The district court found they did not know that. They suspected, vaguely, that Mr. Steinberg was profiting from his position. But one of the factual findings that the court made was that the Malhotras never told the Office of the United States Trustee they suspected Steinberg was getting kickbacks or otherwise secretly profiting from receiving money from real estate agents. So the information that is really the crux of the False Claims Act case that they ultimately filed, they never provided, they never even alleged, much less did they know. So, yeah, they said, we don't like this guy. We smell a rat. But what was Mr. Weber from the trustee's office to do with that? Nothing. If Mr. Weber testified that had they provided, had the Malhotras provided him with any direct and independent knowledge that would have given him a basis to pursue an investigation, he would have done so at once, which he did when he received the information from Mr. Bennett, when he received Mr. Bennett's letter. I want to speak a moment to the public disclosure issue, which the appellants spent a lot of time on, which is unusual in some senses because it's supposed to be a quick trigger and kind of the lower threshold inquiry getting to the more exacting inquiry of original source. What I think is important for this court to look at is how a public disclosure occurs under the False Claims Act. There are specifically enumerated fora in the False Claims Act where public disclosures, where disclosures of government information can occur. They fall into three general categories. One is criminal administration or civil hearings. One is a government report, audit, or investigation. And another is news media. Those are the three general categories. What we're talking about in this case is disclosure in a governmental investigation. What the case law that the appellants are relying on, focus on, are disclosures in a civil, criminal, or administrative hearing, and that's a different matter. So, for example, they cite the Putnam case out of the District of Idaho where there was an argument that information had been disclosed in a civil lawsuit during a deposition and that that triggered the civil hearing disclosure under the False Claims Act. And the court said, no, it's only potentially disclosed until it comes to the court in either open hearing or in a pleading. But there's a footnote in the Putnam case that's very revealing that says, you know, we can see whether under this circumstance there could be a disclosure under one of the other categories of fora, such as if in that deposition there had been a disclosure of a government report. Well, that's what happened in this case. We're talking a lot about whether the deposition was private, whether a bankruptcy was private. The fact remains that what was happening in that room was a government investigation, and it's that type of fora that we need to look at to evaluate. There's no question that what occurred, Mr. Grace's deposition, excuse me, his examination testimony occurred as part of a government investigation, which is a broadly construed term in this circuit under seal versus seal. So the fact that it may not have triggered public disclosure if we were talking about a civil hearing disclosure doesn't, can't ignore the fact that it was disclosed in an administrative, in a government investigation, which takes you to the next question, was it public? And the case law is clear. Seal versus seal says if the disclosure is made to a person who subsequently uses the information that it received to bring a false claims act, that that is public. The quote from the seal one case, again, at page 1162, is with respect to a disclosure that the government made to a single person, a Mr. Gale. And the question was, is that public? Is it in a private sphere or a public sphere? And the court said, but it is public as to Gale in the sense necessary to the sensible operation of section 3730E4A. Because it was disclosed to an outsider to the investigation who now seeks to profit from it as an FCA relater, it was publicly disclosed to that person. That's exactly what we have here with the Malhotras. They were not an insider to the investigation. Again, we have to distinguish the hearing from investigation, examination from investigation. The investigation is what was going on, and they were an outsider to that investigation. The difference between Seale and Schumer that's important is in Seale, the person to whom the government disclosed the information then sought to bring an FCA case. In Schumer, that wasn't the case. Schumer didn't get information from the government and then seek to use it. It's a big distinction between Schumer and Seale here that the district court found significant. The court said this is much more like Seale than Schumer because the Malhotras are like Gale. They got information from the government, and now they're trying to take advantage of it. The Malhotras would have no factual basis to assert the claims that they've asserted in their complaint, but for the fact that the government gave it to them. I guess let me just stop you there, though. I mean, I understand your characterization of the government having given them something, but the government didn't have anything at the time of the Grace examination either. I mean, in terms of the actual information that was revealed, the Malhotras were getting it at the same time basically as the person from the trustee's office. So it seems a little different from Seale 1 where the government literally is, here, take a look at this, versus they're in their own bankruptcy proceeding. They have a right to be there. They're learning of information in real time at the same time the government is. So just help me with that. Two answers to that. First of all, the government did have a lot of information before the Grace deposition. They subpoenaed John L. Scott. John L. Scott produced over 1,000 pages of documents about every single transaction that the government went through in the Grace examination. Every transaction, every referral fee, every check, every payment that the government went through during that examination, they already had before the examination because they had subpoenaed it as part of their investigation from John L. Scott. So they were revealing to the Malhotras at that time what they knew. Second, in terms of simultaneous disclosure, the False Claims Act works the other way. The government doesn't have to beat you to the information. You have to beat the government. So a tie goes to the government essentially is what I'm saying. Just by sitting there next to Mr. Korshaw, the Malhotras don't somehow become conduits of information to the government, helping them hear what everyone's hearing at the same time. I did want to talk about, there's some question about the standard of review here in terms of facts versus mixed facts in law. And on the original source issue, it is the burden of the Malhotras to establish by preponderance of the evidence that they had both direct and independent knowledge. The Meyer case makes clear that the court's determination on that issue is subject to a clear error standard. And the district court in this case said that the Malhotras had neither direct nor independent knowledge. They had no true knowledge at all. And so as a matter of review, that is sufficient on the original source issue to eliminate the Malhotras' claim that they were an original source. My last comment just quickly on the cost issue, because I know it's before the court, is that the district court's ruling on that was, again, based upon its hearing of a full day of testimony. It cut the respondent's fee and cost claim considerably. But one of the things that I think is important for this court, again, in terms of reviewing what the district court did, is Judge Robart found it really wasn't that close of a case in terms of jurisdiction. One of the reasons that he exercises his discretion to award costs at all is because ultimately, after hearing all the testimony, the Malhotras' argument in favor of jurisdiction was weak. Unless you have any more questions, I'll sit down. No. Thank you. You've used up all your time. I'll give you a minute, Mr. Koffel. I said you'd used up all your time, but I'll give you a minute of rebuttal. I very much appreciate that. I'd like to take the minute to sort of harmonize Schumer, seal one in this case. Because I think if you listen to what Mr. Fandel said quite eloquently, the employee in Schumer who received the information, coincidentally, just because he was there, about the fraud, could have gone on and brought a False Claims Act case based on that information. So the fact there's a government investigation going on, the fact the government beat the relator to the punch to get the information, doesn't really make a difference. Because those employees could go and bring a case based on what the government told them. That's what Schumer says. And they said it because the issue is, was the information disclosed in private or was it disclosed in public? And so what I'm asking the panel to do is struggle with that issue. Was it disclosed in private? The U.S. trustee who took this deposition said yes. He said members of the public were excluded. He agreed that the Malhotras had a unique right to be there. They had a connection to the case because Steinberg was a trustee. Grace was a real estate broker in their case. So I think, and you couple that with In re Fal, which says, look, under Rule 2004 now, it's not a public proceeding. It's presumptively not public. That's what I think that didn't happen at the district court, and I ask the panel to struggle with in this case. Thank you. Yes, Your Honor. Thank you. The case just argued, Malhotra v. Steinberg, is submitted. Thank you both for your briefing and the argument here.
judges: GOODWIN, McKEOWN, WATFORD